UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PALANTIR TECHNOLOGIES, INC.,

    Plaintiff,

v.

PALANTIR.NET, INC.,

    Defendant.

No. C 07 3863 CRB

DECLARATION OF GEORGE DEMET

1. I am one of the founders of the company known as Palantir.net, Inc. I serve as its secretary, and have done so since its incorporation on April 24, 2000.

2. I am over the age of 21 years and, if called as a witness, I could testify competently as to the matters set forth in this Declaration.

3. The co-founder of Palantir.net is Tiffany Farriss, president of Palantir.net. In early February, 2007, Tiffany and I became aware of the firm calling itself Palantir Technologies, Inc. ("PTI"), as that company was advertising for available positions on a web site known as Jobs.37signals.com. In reviewing the website for that company at www.palantirtech.com, the company identified itself as a "software startup" and described its product as an "analytical platform" for "revolutionizing information analysis and management." This language describes software for database management. As designing software for others is one of Palantir.net's services, and a service for which a federal trademark registration for PALANTIR® was obtained, Ms. Farriss and I authorized counsel to send a cease and desist letter to PTI.

4. Following our counsel's exchange of demands to PTI to cease use of "Palantir" in its trade name and as a brand, we were advised that the principals for PTI wished to discuss with us

directly their operations in an effort to convince us that both companies could use the mark "PALANTIR." Due to the overlap in services between the two companies and the use of the identical mark, Ms. Farriss and I determined that such a meeting was not appropriate. Instead we directed counsel to advise counsel for PTI it should adopt a new identity. It was our view that, as a start-up company, the option of a different mark would have little or no disruption to its business.

   5. On May 29, 2007, while Ms. Farriss and I were both out of the country, we were notified by our office that Alex Karp had telephoned from PTI requesting an opportunity to "talk with us directly."

   6. Shortly after our return to the office on June 4, 2007, we received a telephone call from a person identifying himself as Alex Karp, who represented that he was the CEO and co-founder of PTI. Mr. Karp stated that he wished to come to Chicago and meet with us face to face.

   7. Mr. Karp stated his belief that both companies could use the term "Palantir" for their businesses, and as CEO and co-founder of PTI, he was in a position to negotiate with us in good faith to reach an agreement. He also stated that his company was "willing to pay to work out a deal."

   8. Ms. Farriss and I explained to Mr. Karp that we would meet with him in the presence of our respective corporate counsel. Mr. Karp said that he was fine with our attorney being present, but would prefer not to bring along his own attorney.

   9. Due to various schedules, including vacation schedules, we finally agreed to meet on June 28, 2007 in the afternoon at the offices of Palantir.net's counsel. That meeting was

confirmed by e-mail on June 26. Thereafter, Mr. Karp called and left a voicemail message requesting that we meet with him in his private hotel room. We declined that change.

10. At our meeting on June 28, both Ms. Farriss and I expressed our regret that Mr. Karp's counsel could not be present. Mr. Karp stated that he did not want his counsel to be present and had asked him not to come.

11. At the meeting, Mr. Karp pulled a document from his pocket that he said showed that the United States Patent and Trademark Office had found no initial conflicts for PTI's trademark application for "Palantir." Both Ms. Farriss and I explained that the initial findings of the trademark examining attorney at the United States Patent and Trademark Office were not binding and that if the application were published for opposition, we intended to oppose the registration of that mark.

12. Both Ms. Farriss and I express our position that there was a significant potential for confusion if both companies used the term "Palantir," and we believed that PTI should resolve the matter by changing its name.

13. We both told Mr. Karp that we were willing to go to court to defend our trademark in light of the importance of the brand to our business.

14. We advised Mr. Karp that even though his company was not yet advertising a product or service directly, we had already encountered individuals at conferences who confused our company with PTI based on PTI's advertisement for job openings using the term "Palantir" on the same websites through which we had advertised.

15. In addition, we noted that since we first contacted them in February, 2007, PTI had started advertising on Google in order to increase their search engine ranking for the term "Palantir" which also seemed likely to cause confusion.

16. During the conversation, Mr. Karp repeatedly made the argument that litigation was not a solution to the problem since there was a reasonable chance that we could lose the case and such action would take many years and cost several hundred thousand dollars in legal fees in any event. Both Ms. Farriss and I told Mr. Karp that given the 11 year investment in that brand, we were prepared to incur such cost to defend our trademark.

17. Mr. Karp then stated that based on his experience working as a consultant, he believed our company to consist of a couple of people with revenues of no more than $200,000. I explained that in fact, our company had at that time nine full time employees, that we were in the process of hiring several more, and that our revenues were much greater than his estimate.

18. Mr. Karp then stated that he was not interested in spending a lot of his personal time in fighting a legal case. He had been authorized by his board to offer us $25,000 per year to compensate us for the "inconvenience" of his company's use of "Palantir." I explained that the sum was inadequate and that his offer did nothing to address his concerns about confusion in the marketplace.

19. Mr. Karp acknowledged that his company did create database software, but that there was no likelihood of confusion as his company did business nationwide, was based in California and dealt largely with governmental agencies.

20. Ms. Farris and I explained that Palantir.net also does business nationwide, and had done business with clients in California, as well as Washington, D.C. We also explained that we had done work for contractor and subcontractors for federal governmental agencies which we believed one of PTI's target markets.

21. Mr. Karp stated that PTI's business plan was to be acquired by a larger entity (*e.g.* IBM or Oracle) so that it was quite likely that his company would no longer exist as an

independent entity within the next two to four years. At that time, the new owners would no longer have a need for use of "Palantir."

22.   I stated that it was possible that his company could be purchased by such an entity, it was also possible that as a start-up firm PTI might run out of investment capital and be forced to cease operations within that time, as has happened to other start-ups. I expressed my concern about the possibility at Palantir.net might be negatively associated with the publicity caused by such a "flame-out."

23.   Ms. Farriss and I explained that our business model was as lifestyle entrepreneurs: *i.e.* we were in the business for the long haul and did not want to be mistaken for high risk ventures such as PTI. We expressed our concern that while PTI was currently in an organizational phase and therefore not engaging in publicity (*i.e.* "stealth mode"), at some point it would be spending money on advertising and publicity. If PTI continued to use the brand "Palantir," they would have the ability to overshadow our company if in fact they had the greater capitalization.

24.   Ms. Farriss and I advised Mr. Karp that even a rudimentary name search at the Trademark Office website would have revealed our pending application for "PALANTIR" prior to PTI's selection and adoption of its trade name and mark. Mr. Karp acknowledged that it made mistakes during his business career and perhaps not doing a name search before adopting "Palantir" was one of them.

25.   Mr. Karp proposed returning to his board of directors to determine what could be offered to us. Both Ms. Farriss and I stated that we would be willing to listen to a proposal, but that what was most important to us was that any proposed agreement address the potential of confusion that would arise out of concurrent use of "Palantir" as a brand.

26.   Mr. Karp stated that the options he saw available to the board to consider were reaching a monetary settlement or making an offer to "buy you." I asked Mr. Karp to consider the option we had been urging since February, *i.e.* that his company simply change its name and mark at this early stage of its existence. Mr. Karp agreed to present this option to his board.

27.   The conversation turned to a discussion of a monetary proposal. I asked Mr. Karp to consider that as part of a monetary settlement that PTI agree to a significant "initial down stroke." Mr. Karp stated that his company would consider annual payments tied to a percentage of PTI's revenues with a maximum annual cap on such payouts, which he said could be $100,000. Mr. Karp said that he would be meeting with his board in the next week and would have a proposed agreement to us within two weeks.

28.   After the meeting, I believe that Mr. Karp was sincere in stating that he would go back to his board and provide us with a better offer through the negotiating process. However, I also concurred in drafting a complaint in the event that negotiations ultimately would not be successful.

29.   On July 13, 2007, fifteen days after our meeting, we received a written proposal from PTI. Most disappointing to me was that the proposed agreement allowed PTI to use the identical mark "Palantir" not only with its proposed database management software and other services, but also to use the term "Palantir" in connection with other terms for other marks and brands. Such a proposal did not address our concern with marketplace confusion.

30.   While considering what response, if any, to make to PTI's proposal, we were advised from our counsel of his conversation with his counterpart for PTI. We understood that counsel was awaiting our response, but was not pressuring us for an immediate one.

31. Nonetheless, on July 24, 2007, through our counsel, we presented a counteroffer. That proposal address our concern with marketplace confusion by limiting PTI to the phrase "Palantir Technologies" instead of "Palantir" alone. In addition, our proposal included a disclaimer that PTI was not affiliated with Palantir.net.

32. We learned later that day from our counsel that the attorney for PTI had requested a copy of the offer in Word format, which we understood to mean that counsel would likely be re-working our counter-proposal to negotiate some difference terms.

33. On July 28, 2007, we received an e-mail through Palantir.net's website contact form from an unknown law firm in California, advising us that we had been sued in federal court in a trademark dispute and asking if we needed counsel. We then logged on to PACER where we discovered that on Friday, July 27, 2007, PTI had filed a suit for declaratory judgment in the United States District Court for the Northern District of California. We immediately contacted our attorney and advised him of this development. No other notice of any rejection of our counterproposal or in settlement discussions had been received prior to this time. It was at this time that Ms. Farriss and I realized that, despite Mr. Karp's statements to the contrary, PTI had not been involved in good faith negotiation but had, unbeknownst to us, had no intention of negotiating beyond its initial offer.

FROM :Palantir.net                FAX NO. :8473282211                Aug. 16 2007 04:31PM  P3

FURTHER DECLARANT SAYETH NAUGHT.

I, George DeMet, declare under penalty of perjury under the law of the United States, the foregoing is true and correct. Executed in Evanston, Illinois on August 15, 2007.

_George DeMet_