1

**KATHRYN J. FRITZ (CSB NO. 148200)**
**FENWICK & WEST LLP**

2

555 California Street, 12th floor
San Francisco, CA  94104

3

Telephone:  (415) 875-2300
Facsimile:  (415) 281-1350

4

Email:      kfritz@fenwick.com

5

**DWIGHT D. LUECK**
**BARNES & THORNBURG LLP**

6

11 S. Meridian Street
Indianapolis, IN  46204-3506

7

Telephone:  (317) 231-1313
Facsimile:   (317) 231-7433

8

Email:      dwight.lueck@btlaw.com

9

Attorneys for Plaintiff
PALANTIR TECHNOLOGIES INC.

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

SAN JOSE DIVISION

13

14

PALANTIR TECHNOLOGIES INC.,

               **Case No.  C-07-3863 CRB**

15

         Plaintiff,

               Date:  September 21, 2007

16

     v.

               Time:  10:00 AM
               Courtroom 8

17

PALANTIR.NET, INC.,

18

         Defendant.

19

               Supporting Documents:
                 •  Declaration of Dr. Alexander Karp

20

                 •  Declaration of Dwight D. Lueck

21

22

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS ACTION UNTIL THE PENDING ILLINOIS CASE IS DECIDED**

23

24

25

26

27

28

1

**POINTS AND AUTHORITIES TO MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS
ACTION UNTIL THE PENDING ILLINOIS CASE IS DECIDED**

2

3

4    *Charles Schwab & Co., Inc. v. Duffy*, 1998 WL 879659 (N.D. Cal. 1998) ................................ 7

5    *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906 (N.D. Ill.
     1998) ........................................................................................................................... 8

6

7    *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982) ................................. 5

8    *Sony Computer Entertainment America Inc. v. America Medical Response, Inc.*, 2007
     WL 781969 (N.D. Cal. 2007) ......................................................................... 5, 6, 7, 8

9    *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir.
     1987) ...................................................................................................................... 6, 8

10

11   *Ward v. Follett Corporation*, 158 F.R.D. 645 (N.D. Cal. 1994) ........................................ 6, 7, 9

12   *Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 118 (C.D. Cal. 2006) .................................. 8

13   *Z-Line Design, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663 (N.D. Cal. 2003) ............................ 6, 7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    This dispute results from the efforts of the Defendant, Palantir.net, Inc., to prevent anyone

2    else in the computer software and consulting fields from using the word "palantir" as part of its

3    trademark or  business name.  Plaintiff, Palantir Technologies Inc. ("PTI"), has been using the

4    word "palantir" in its trade name since 2004 and trademark since 2005.  The word "palantir"

5    comes from the classic novels of J.R.R. Tolkein and means magical object or "seeing stone."

6        Defendant sent a letter to PTI's Palo Alto, California offices in February 2007 demanding

7    that PTI cease and desist using the word "palantir" in its trademark or business name.  The parties

8    engaged in good faith negotiations in an attempt to reach an amicable resolution of the dispute.

9    After PTI concluded that an amicable resolution was not possible, it filed the pending lawsuit

10   before this Court.  Three days later, after it learned that PTI had filed this action, Defendant filed

11   a duplicative suit in the United States District Court for the Northern District of Illinois.  It now

12   seeks to dismiss or stay this first-filed lawsuit in favor of that second-filed suit.  As established

13   below, both the facts and the law establish that the case should remain here.  As a result,

14   Defendant's motion should be denied.

15                                    **BACKGROUND**

16       PTI has been using its PALANTIR trademark since as early as August, 2005 in

17   connection with providing information and data management and exploration services to others

18   and designing and selling software to facilitate the same.  To help protect its rights in its

19   trademark, PTI filed an application to federally register PALANTIR on February 20, 2007 in

20   connection with "information and data management and exploration; namely the collection,

21   editing, analysis, viewing, organization, modification, book marking, transmission, storage,

22   exchange, sharing, querying, auditing, and tracking of data and information."  PTI's trademark

23   application was filed without any knowledge that Defendant objected to the use and registration

24   of the PALANTIR mark.  (Lueck Decl. ¶ 6).  On the same day PTI filed its trademark application,

25   it received a cease and desist letter from Defendant objecting to the use the PTI's trademark,

26   contending that such use constituted trademark infringement and caused a likelihood of

27   confusion.  (*See* Ex. E to Def. Mem.).  Subsequently, Defendant, through counsel, has repeatedly

28   voiced the position that the use the PTI's trademark causes a likelihood of confusion and

1  constitutes trademark infringement.  (Lueck Decl. ¶ 9; *See also* Exs. H, I, and J to Rosenwein

2  Decl.).  While Defendant's communications have demanded that PTI cease use of its mark, at no

3  time did Defendant provide a deadline for PTI to cease use of its mark or threatened suit by a date

4  certain.  *Id.*

5         After receiving Defendant's first letter and investigating Defendant's claims, PTI sent a

6  letter to Defendant on March 8, 2007 denying that any likelihood of confusion exists and stating

7  PTI's belief that the party's respective marks could coexist.  (*See* Ex. G to Rosenwein Decl.).

8  Additionally, PTI sought a conversation with Defendant to discuss the matter and to try to find an

9  amicable solution.  (Lueck Decl. ¶ 11; Karp Decl. ¶ 9).  Although PTI remained hopeful the

10  matter could be resolved amicably, in advance of the settlement meeting on June 28, 2007, Dr.

11  Alexander Karp ("Karp"), Chief Executive Officer of PTI,  instructed PTI's counsel to prepare a

12  complaint that could be filed in the United States District Court for the Northern District of

13  California, where PTI is located and where PTI believed the dispute should be resolved.  (Karp

14  Decl. ¶ 12).

15         On June 28, 2007, Karp met with Defendant's representatives.  He reiterated PTI's

16  assertion that the parties' marks could coexist.[1]  (Karp Decl. ¶ 10).  During the meeting, the

17  Parties agreed that PTI would prepare and circulate a proposed agreement hoping to address

18  Defendant's concerns.  (*Id*. at ¶ 13).

19         At no time, either during this June 28 meeting, or before or after the meeting, did PTI state

20  or imply that PTI would not file suit against Defendant because the parties were engage in

21  settlement discussions.  (Lueck Decl. ¶¶ 14, 15; Karp Decl. ¶¶ 18, 19).  Also, at no time has

22  Defendant stated or implied that it was forgoing filing suit against PTI because the parties were

23  engaged in settlement discussions.  (*Id.)*

24         On July 13, 2007, PTI provided in good faith to Defendant a proposed settlement

25  agreement (the "Proposal").  (Lueck Decl. ¶ 13).  On July 24, 2007, Defendant sent to PTI a

26

27  [1] The parties agreed that the June 28 settlement discussions were in the nature of settlement
    discussions, therefore confidential.  (Lueck Decl. Ex. C).  In light of this agreement, PTI has
28  avoided discussions of details of that June 28 meeting.

1   counter-proposal that consisted of drastic changes to PTI's original proposed terms for settlement.

2   (the "Counter-Proposal").  *(Id.* at ¶ 16).  That same day, counsel for PTI requested a copy of the

3   Counter-Proposal in Word® format for the purpose of more clearly identifying the changes made

4   to the terms of PTI's Proposal.  (Karp Decl. ¶ 15; Lueck Decl. ¶ 16).

5          After seeing the radical changes that Defendant had made to what PTI believed to be a

6   very generous settlement proposal, Karp authorized PTI's counsel to conclude preparation of, and

7   to file the complaint against Defendant.  (Karp Decl. ¶ 16).  On July 27, 2007, PTI filed a

8   complaint with this Court requesting declaratory judgment that use of its PALANTIR mark does

9   not infringe Defendant's rights.  (Lueck Decl. ¶ 19).

10         On July 30, 2007, by its own admission after it knew that PTI had commenced this action,

11  Defendant filed a Complaint in the Unites State District Court for the Northern District of Illinois

12  and sent to PTI a copy of the Complaint with a Request for Waiver of Summons on July 31, 2007.

13  (Def. Mem. at 6; *See* Ex. D to Lueck Decl.).

14         The word PALANTIR is not a fanciful term created by Defendant.  (Lueck Decl. ¶ 5 and

15  Ex. B thereto).  Instead, the term was first used by J. R. R. Tolkien many years ago as the name

16  for certain magical "seeing stones" that facilitate communication between those possessing them,

17  regardless of their location.  *Id.*  The term has since become a part of the American lexicon, used

18  widely both as a word and as incorporated into the trademarks of several others.  It is certainly

19  nothing over which Defendant can claim a monopoly.

20                                          **ARGUMENT**

21         As Defendant concedes in its Memorandum:  "In general, when parties sue each other in

22  different federal courts, one for declaratory relief of non-infringement, and the other for

23  infringement, the first-filed declaratory judgment is given priority and allowed to proceed."  (Def.

24  Mem. at 7);  *See also Sony Computer Entertainment America Inc. v. America Medical Response,*

25  *Inc.*, 2007 WL 781969, *2 (N.D. Cal. 2007) (*citing Pacesetter Systems, Inc. v. Medtronic, Inc.*,

26  678 F.2d 93, 94-5 (9th Cir. 1982)).  The "first-to-file" rule was developed to "serve [ ] the

27  purpose of promoting efficiency well and should not be disregarded lightly."  *Id.* at *2, *citing*

28  *Church of Scientology of California v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir.

CASE NO. C-07-3863 CRB
MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY          - 3 -
THIS ACTION UNTIL THE PENDING ILLINOIS CASE IS
DECIDED

INDS02 916592V1

1979).

Defendant asks this Court to depart from the "first-to-file" rule based on what it identifies as "[t]he leading decision in this area," *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987). (Def. Mem. at 7). Defendant fails to note that on March 13 2007, Judge Wilkin of this Court held that "*Tempco* is a Seventh Circuit case and is not binding authority on the Court" and retained jurisdiction over a first-filed declaratory judgment lawsuit with facts very similar to those in the present case. *Sony Computer Entertainment America Inc.*, at *6, 7-8.

As the Defendant notes, the Ninth Circuit recognizes that exceptions to the general, first-to-file rule may exist in circumstances in which the declaratory plaintiff acted in bad faith, if the first suit is plainly anticipatory, or if the plaintiff engaged in "transparent forum-shopping." (Def. Mem. at 8). *See also, Sony Computer Entertainment America Inc.* at *3, citing *Alltrade Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *Ward v. Follett Corporation*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). For the reasons and authorities discussed below, it is clear that none of these exceptions are applicable in this case and the general, first-to-file rule should be followed.

In an attempt to obtain dismissal of this case, Defendant mischaracterizes PTI's good faith attempts to settle this matter as "stealthy" "sham negotiations." (Def. Mem. at 11). The facts contradict these claims. The record establishes a consistent, good-faith effort on the part of PTI to reach an amicable resolution of this dispute. PTI went so far as to send its C.E.O. to Chicago in an attempt to reach settlement. These were not "sham negotiations."

Defendant makes much of the fact that, after receiving Defendant's Counter-Proposal, PTI's counsel asked for a copy in Word® format. This was not "stealthy." It was merely an effort to better understand the radical changes made to the original proposal so that PTI could determine whether there appeared to be any hope of compromise. If Defendant believed otherwise, that belief was based on facts never shared with PTI, nor reasonably inferred from the circumstances.

The facts of this case clearly do not support dismissal of this first-filed lawsuit. For example, in *Z-Line Design, Inc. v. Bell'O Int'l LLC,* 218 F.R.D. 663, 666 (N.D. Cal. 2003), relied

1    upon by Defendant in its Memorandum, the defendant to a declaratory judgment action had made

2    clear that it would file an infringement lawsuit after a date certain. *Id.* at 664. After the plaintiff

3    agreed to extend the deadline, the plaintiff filed suit prior to the expiration of the extended

4    deadline. *Id.* The court found that the plaintiff's agreement to extend the deadline with full

5    knowledge of an imminent infringement lawsuit was a misleading communication and constituted

6    bad faith. *Id.* at 666. Those facts are radically different from those in the present case, in which

7    no specific threat of the filing of a complaint was ever communicated to PTI. Moreover, this

8    case is easily distinguished from *Charles Schwab & Co., Inc. v. Duffy*, 1998 WL 879659 (N.D.

9    Cal. 1998), because, as established above, neither PTI nor its counsel have engaged in deceptive

10   conduct.

11          In *Ward v. Follett Corporation*, 158 F.R.D. 645 (N.D. Cal 1994), this Court followed the

12   first-to-file-rule after determining that a declaratory judgment lawsuit was filed with no notice to

13   the other party even when the filing party continued settlement negotiations for nearly two more

14   months without informing the other party of the existence of the lawsuit. This Court determined

15   that filing party's actions did "not amount to bad faith warranting a departure from the 'first to

16   file' rule." *Ward* at 649-650.

17          Here, counsel for PTI called counsel for the Defendant one business day after PTI filed its

18   complaint to inform the Defendant as such and that a copy of the complaint would be sent shortly.

19   (Lueck Decl. ¶ 20). Under *Ward*, PTI's actions do not constitute bad faith litigation and therefore

20   do not warrant a departure from the first-to-file rule.

21          The Defendant also asserts that PTI's first-filed suit was plainly anticipatory. (Def. Mem.

22   at 8). A suit is anticipatory when a plaintiff files its suit for declaratory judgment upon receipt of

23   specific, concrete indication that a suit by defendant was imminent. *Z-Line Design, Inc.* at 665;

24   *see also Ward* at 649.

25          In *Sony,* the defendant to a declaratory judgment lawsuit provided the plaintiff with a draft

26   complaint accompanied by a letter explaining that if the plaintiff did not cease use of its mark by

27   a certain deadline, "the complaint might be filed without further notice." *Sony Computer*

28   *Entertainment America Inc.* at *1. One day after the defendant's deadline passed, the plaintiff

1  filed suit for non-infringement. This Court held that the defendant's letter "did not establish that

2  the suit was imminent." *Id.* at *3.

3        Since its first letter to PTI over five months prior to the initiation of this lawsuit,

4  Defendant has consistently demanded that PTI cease use of its PALANTIR mark asserting that it

5  constituted infringement. (Lueck Decl. ¶ 9). Yet, Defendant has never provided PTI with any

6  specific threat of litigation or a deadline upon which Defendant would institute an infringement

7  lawsuit. (Lueck Decl. ¶¶ 14, 15; Karp Decl. ¶¶ 18, 19). The Defendant has never provided PTI

8  with a draft complaint or even provided a deadline for PTI to cease use of its mark. *Id.*

9        In light of these facts, PTI cannot be accused of improperly filing its complaint. If

10 anything, it has been unreasonably patient as it spent five months trying to reach an amicable

11 resolution of this dispute rather than rushing to the courthouse. As a result, its actions cannot be

12 construed to constitute "anticipatory litigation." *Sony Computer Entertainment America Inc*. at

13 *3.[2]

14       Defendant cites *Tempco* to support its motion. However, not only has this Court recently

15 declined to follow *Tempco*, the facts of *Tempco* are starkly different from the facts in the present

16 case. After receiving several letters threatening litigation, the plaintiff in *Tempco* filed a

17 complaint requesting declaratory judgment for non-infringement on the *same* day it received a

18 letter from the defendant stating that the plaintiff's continued refusal to cease use of its mark "left

19 the [defendant] no alternative but to file an action to protect its interests." *Id*. at 747. The present

20 case is easily distinguishable from *Tempco* because Defendant did not demonstrate that a lawsuit

21 was imminent -- it did not make any specific, concrete threats of litigation or provide any

22 deadline by which PTI was to comply with Defendant's demands. (Lueck Decl. ¶¶ 14, 15; Karp

23 Decl. ¶¶ 18-20). Rather, Defendant continued to assert over a period of five months that PTI's

24 mark infringed Defendant's rights, clouding PTI's own rights with no end in sight to Defendant's

25 threats. (Lueck Decl. ¶¶ 14, 15; Karp Decl. ¶¶ 18-20). For these reasons, PTI was wholly within

26
27
28

---

[2]Defendant's Memorandum contains multiple incorrect citations. For clarification purposes, PTI assumes that the Defendant refers to *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F.Supp.2d 906 (N.D. Ill. 1998) and *Xoxide, Inc. v. Ford Motor Co.*, 448 F.Supp.2d 118 (C.D. Cal. 2006) in Defendant's Memorandum at 9.

1   its rights to bring the matter to a head by filing the present suit.

2       Defendant further asserts that PTI improperly attempted to forum shop under the theory

3   that PTI somehow forestalled an imminent lawsuit utilizing bad faith litigation.  As explained

4   above, Defendant has made no showing of an imminent lawsuit by Defendant or any evidence of

5   bad faith litigation.

6       PTI's actions have been wholly reasonable.  For example, in *Ward*, this Court determined

7   that a two month delay in service and notification of the filing of a declaratory judgment

8   complaint to the other party did not constitute an anticipatory filing "… for the purposes of

9   securing a favorable forum."  Instead, this Court found that the filing party delayed service

10  "presumably 'because it appeared … that the situation could be resolved without the expense of

11  litigation.'"  *Ward* at 649.  Similar to the filing party in *Ward*, PTI sought and entered into good

12  faith negotiations with Defendant because it appeared the situation could be resolved without the

13  expense of litigation.  Once Defendant's actions made it clear to PTI that the situation could not

14  be resolved through negotiation, it filed its complaint in the Northern District of California.

15      As in *Ward,* there is no evidence of improper forum shopping to justify an exception to

16  the first-to-file rule.  Further, the fact that PTI's business headquarters is located in Palo Alto,

17  California and that Defendant sent its cease and desist letter to PTI in Palo Alto, California

18  demonstrate that PTI did not engage in improper forum shopping and PTI's lawsuit should be

19  permitted to proceed accordingly.

20      As Defendant aptly points out, there is no appreciable difference in the speed with which

21  this matter will go to trial in either forum.  (Def. Mem. at 11).  PTI disagrees, though, with the

22  claim that it would suffer no prejudice by having this case dismissed or transferred to the

23  Northern District of Illinois.  For five months PTI engaged in good faith efforts to remove the

24  cloud that Defendant improperly placed over PTI's rights in its business name and trademark

25  through Defendant's wrongful allegations of trademark infringement.  PTI has now brought suit

26  in the proper court to resolve this dispute promptly.  Defendant should not be rewarded by

27  allowing  its second-filed lawsuit to proceed, with it as the plaintiff, in a different jurisdiction.

28

1

**CONCLUSION**

2

WHEREFORE, plaintiff Palantir Technologies, Inc. prays that this Court deny defendant's

3

motion to dismiss or, in the alternative, to say this action until he pending Illinois case is decided.

4

5

Dated: August 31, 2007                      **BARNES & THORNBURG LLP**

6

7

By:/s/ Dwight D. Lueck

8

**DWIGHT D. LUECK**

9

11 S MERIDIAN ST
INDIANAPOLIS, IN 46204-3506

10

Telephone: (317) 231-1313
Facsimile: (317) 231-7433

11

Email:     dwight.lueck@btlaw.com
[*Pro hac vice*]

12

and

13

14

**KATHRYN J. FRITZ (CSB NO. 148200)**
**FENWICK & WEST LLP**

15

555 California Street, 12th floor
San Francisco, CA  94104

16

Telephone: (415) 875-2300
Facsimile:  (415) 281-1350

17

Email:     kfritz@fenwick.com

18

Attorneys for Plaintiff
**PALANTIR TECHNOLOGIES INC.**

19

20

21

22

23

24

25

26

27

28