**KATHRYN J. FRITZ (CSB NO. 148200)**
**FENWICK & WEST LLP**
555 California Street, 12th floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350
Email: kfritz@fenwick.com

**DWIGHT D. LUECK**
**BARNES & THORNBURG LLP**
11 S. Meridian Street
Indianapolis, IN 46204-3506
Telephone: (317) 231-1313
Facsimile: (317) 231-7433
Email: dwight.lueck@btlaw.com

Attorneys for Plaintiff
PALANTIR TECHNOLOGIES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> v. <br><br> PALANTIR.NET, INC., <br><br> Defendant. | **Case No. C-07-3863 CRB** <br><br> **DECLARATION OF STEPHEN COHEN - REDACTED** |

Stephen Cohen, of full age, declares as follow:

1. I am over the age of 21 years, am competent to make this declaration, and have personal knowledge of the following facts.

2. I graduated from Stanford University with a B.S. in Computer Science in 2004.

3. I am Executive Vice President of plaintiff Palantir Technologies Inc. ("Palantir Technologies"), a founding member of that company, and sit on its Board of Directors. Palantir

**DECLARATION OF STEPHEN COHEN**                  **CASE NO. C-07-3863 CRB**

Technologies' offices are located at 100 Hamilton Avenue, Suite 300, Palo Alto, California 94301.

4. I have been employed by Palantir Technologies since 2004.

A. <u>Palantir Technologies' Products and Clients.</u>

5. Palantir Technologies provides a highly sophisticated computer software tool and services that create a secure investigative environment in which the user may (1) connect and discover various pieces of data contained in any source of data including but not limited to databases, text files, Word documents, Excel spreadsheets and more; (2) search the data contained in those data sources; (3) create a record of the actions taken by the user; and (4) collaborate between users so that the results of a search or search tactic may be shared between users and teams of analysts.

6. Palantir Technologies has spent over ▮▮▮▮ million to develop its products.

7. The target audiences of Palantir Technologies have been, since its inception, the intelligence community and those in the financial community who would have a need for Palantir Technologies' sophisticated computer software and services such as traders, analysts and researchers.

8. Palantir Technologies offers two products, Palantir Government, which is a platform for the intelligence community, and Palantir Financial, which is concept-based analysis environment for the financial community.

9. Palantir Government is a Java application that makes no use of a web browser or the internet. Palantir Government is generally deployed on top-secret networks that, for security reasons, cannot even be connected to the internet. Its principle purpose is to allow intelligence analysts, operators and targeters to collaborate in the process of discovering new information, building up a base of knowledge that in turn promotes future discovery.

**DECLARATION OF STEPHEN COHEN** - 2 - **CASE NO. C-07-3863 CRB**

10. Palantir Financial allows the user to draw connections between disconnected data that may allow the user to, for example, forecast future performance of a particular segment of the financial market.

11. It is easiest to understand Palantir Technologies' products by seeing a demonstration of the manner in which they operate. Attached to this Declaration as Exhibit A is a disc containing a presentation, in Flash format, showing how Palantir Government functions. The presentation can be accessed by placing the disc in a computer that has Microsoft Internet Explorer and by selecting movie.html under the Presentation 1 folder.

12. Also included as part of Exhibit A is a shorter presentation showing investigative models of Palantir Technologies' products. The presentation can be accessed by selecting PTI00001059 presentation.swf under the Presentation 2 folder.

13. Both Palantir Government and Palantir Financial are highly sophisticated products. Although neither product has a "list price," the price for installation of and training on the Palantir Government product has been in excess of $100,000 per client.

14. Clarium Capital Management LLC ("Clarium"), the client with whom Palantir Technologies has been working as Palantir Technologies develops its Palantir Financial product, has paid Palantir Technologies in excess of ▮ million for the software and services that Palantir Technologies has provided to Clarium. Palantir Technologies expects that its Palantir Financial product and the related training and services will cost in excess of $100,000 per installation when that product is made available on a broader scale.

15. Although Palantir Government and Palantir Financial may be slightly customized for a particular client, the products offered remain essentially the same from client to client. In other words, Palantir Technologies is not in the business of developing customized software for clients. Rather, it is in the business of providing its two products, Palantir Government and

**DECLARATION OF STEPHEN COHEN** - 3 - **CASE NO. C-07-3863 CRB**

Palantir Financial, to clients, along with the training and limited customization of the products that may be needed for the clients to optimize their use of Palantir Technologies' products.

16. Palantir Technologies has no plans to develop products in addition to its Palantir Government and Palantir Financial products.

17. I understand that Palantir.net, Inc. ("PNI"), the defendant in this case, has alleged that Palantir Technologies has created a likelihood of confusion in the mind of consumers between Palantir Technologies and PNI by offering its products and services under the PALANTIR mark.

18. Based on my understanding of the activities of Palantir Technologies and PNI, I see the two companies operating in entirely different fields and offering products and services to different customer bases. Based on my observation of the deposition of George DeMet, PNI's C.E.O., I understand PNI to be engaged primarily in the design of internet websites for others. Palantir Technologies has not engaged in such activities and has no intention of doing so in the future.

19. I understand that PNI may also have engaged in the design of custom software for its clients, including software that it identifies as "database software."

20. Palantir Technologies is not in the business of developing custom software for others. To the extent a client receives any customization of a Palantir product, it is only to the extent needed to adapt the Palantir Technologies product to function more effectively with the client's particular computer system and the data that the client wishes to analyze.

21. I also understand that PNI alleges that Palantir Technologies is engaged in the business of designing database software for others. As an initial matter, Palantir Technologies is not engaged in the design of database software at all. Rather, Palantir Technologies' product accesses data without creating new databases.

**DECLARATION OF STEPHEN COHEN** - 4 - **CASE NO. C-07-3863 CRB**

22. Moreover, the aim of Palantir Technologies' software is not to create a database that is then filled or "populated" with the client's data. Rather, the aim is to access data from diverse sources and assist the user in drawing connections between that data. By way of example, the Palantir Government product might be used to assist the client in identifying a particular telephone number as a telephone number used by the target of an investigation.

23. An additional distinction between Palantir Technologies' products and those offered by PNI is that Palantir Technologies' products run on desktop Java applications on a client's computer and are not accessible over the internet. I understand that most of the software designed by PNI uses a web browser as its front-end interface.

B. <u>Palantir Technologies' Customers and Prospective Customers.</u>

24. The Palantir Government product is currently licensed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, for use by several affiliated government agencies.

25. Palantir Technologies is promoting the Palantir Government product to others in the U.S. intelligence community and to intelligence organizations outside of the United States.

26. Palantir Technologies is promoting its Palantir Financial product to the traders and analysts who would be using the product.

27. I have been involved in numerous presentations and sales calls promoting the Palantir Government and Palantir Financial products. None of those presentations or sales calls have been made to people within the prospective clients' organization who are responsible for designing, maintaining or updating that clients' websites. Moreover, I am not aware of any of the people with whom I have worked having any responsibilities for the design, maintenance or modification of the client's website.

### C. Palantir Technologies' Promotional Efforts.

28. As noted above, Palantir Technologies' target markets are the intelligence community and the financial community. Both of these markets are rather insular and present challenges to marketing and promotion of Palantir Technologies' products.

29. In the case of the intelligence community, marketing over the internet or through publications aimed at that community would not have been successful. Rather, Palantir Technologies has determined that the best manner in which to approach this community was through a highly personal, interactive approach. Palantir Technologies retained advisors and consultants, many of whom already had relationships with members within the intelligence community, to assist in promoting the Palantir Government product.

30. Palantir Technologies has retained advisors and consultants such as this since 2004. It spent in excess of ▆▆▆ on these individuals in 2004, ▆▆▆ in 2005, ▆▆▆ in 2006, and ▆▆▆ (to date) in 2007.

31. These advisors and consultants have provided one-on-one consultation and tutorials to members of the intelligence community.

32. The result of these consultations and tutorials is a stream of communication within the intelligence community, often carried out over secure modes of communication, concerning Palantir Technologies and its Palantir Government product.

33. The resources that Palantir Technologies has devoted to the promotion of its Palantir Government product and the PALANTIR mark are extensive, and of great value to Palantir Technologies. If Palantir Technologies were forced to change its name and trademark, it would lose much of the goodwill that it has created through its advisors and consultants. Conversations within the intelligence community about the Palantir Government product would not be connected back to Palantir Technologies and its Palantir product.

**DECLARATION OF STEPHEN COHEN** - 6 - **CASE NO. C-07-3863 CRB**

34. Potential customers of the Palantir Financial product are a limited population of sophisticated financial analysts, including the major investment houses and hedge funds, which would have the need for, and the resources to purchase, the Palantir Financial product.

35. Palantir Technologies has made presentations to several of these target customers to date.

36. Palantir Technologies is not an e-commerce or internet-based business. Rather, Palantir Technologies offers a highly sophisticated product that is introduced to prospective customers through referrals and through personal visits and solicitations.

37. Palantir Technologies has maintained a website, found at www.palantirtech.com, since 2004.

38. The purpose of Palantir Technologies' website is not to solicit business. Its goods and services are not available over the internet. Indeed, I am not aware of any leads or business that has come to Palantir Technologies through its website. Rather, Palantir Technologies maintains a presence on the internet so that those who may have heard of Palantir Technologies can find contact information if they seek such information. For example, intelligence analysts who have learned of the Palantir Government product through a presentation but have not retained a business card may obtain contact information through Palantir Technologies' website.

39. Palantir Technologies has also made limited use of Google's AdWords service. This service allows one to have its sponsored link appear in a separate portion of the Google results page in addition to the links that are generated in the normal course of a search using a search engine such as Google.

40. Palantir Technologies has used the AdWords service to find prospective employees. The sponsored links have said the following: "Palantir Technologies: Emancipate

**DECLARATION OF STEPHEN COHEN** - 7 - **CASE NO. C-07-3863 CRB**

intelligence -- You're Brilliant. We're Hiring" and "Palantir Technologies: Emancipate intelligence -- The Future of Data Exploration".

41. I understand that PNI has alleged that Palantir Technologies is attempting to use the Google AdWords service to change its rankings in search reports. Although the algorithm used by Google in its searches is proprietary and confidential, I understand that Google has represented that use of its AdWords service does not materially increase one's rankings.

42. In any event, Palantir Technologies' use of Google's AdWords service has been minimal. Palantir Technologies has spent a grand total of $352.09 in AdWords placement through November 2007.

43. Also, as mentioned above, Palantir Technologies is not operating an e-commerce website. Its promotional efforts are directed toward one-on-one meetings, not advertising over or through the internet. The purpose of the Google AdWords effort has been to attract job applicants, not clients.

44. I understand that Palantir Technologies' use of Google's AdWords service would not prevent PNI from also using the service to promote its website if it decided to use the service.

D. <u>There Is No Confusion Between Palantir Technologies and PNI.</u>

45. I have been employed by Palantir Technologies since it began promoting its products in 2004.

46. At no time during my employment at Palantir Technologies has a customer or prospective customer expressed confusion between Palantir Technologies and PNI, questioned whether there was some affiliation between Palantir Technologies and PNI, or even asked me or anyone else at Palantir Technologies about PNI.

47. At no time during my employment at Palantir Technologies has a customer or prospective customer expressed any confusion as to the source of the products and services

**DECLARATION OF STEPHEN COHEN** - 8 - **CASE NO. C-07-3863 CRB**

offered by Palantir Technologies, or expressed confusion as to whether the products that we offer are designed by or sold by PNI.

48. I understand that PNI has indicated that there may be confusion among prospective employees of Palantir Technologies and PNI as to whether there is a relationship or connection between the two companies.

49. I have been involved in recruiting and interviewing prospective job candidates at Palantir Technologies since 2004. At no time has any job candidate expressed confusion between Palantir Technologies and PNI or even mentioned PNI.

50. I am not aware of Palantir Technologies losing a prospective employee to PNI, nor am I aware of Palantir Technologies hiring a prospective employee that was being solicited by PNI.

51. In the entire time that I have worked for Palantir Technologies, I have never had anyone mention PNI (outside of the pending litigation), ask me if I was affiliated with PNI, or ask if there was some connection between Palantir Technologies and PNI.

E. <u>Palantir Technologies Would Suffer Severe Harm If It Were Enjoined from Using the PALANTIR Mark and the Palantir Technologies Name.</u>

52. Palantir Technologies has expended significant resources in the promotion of its PALANTIR mark including stationery, business cards, marketing and promotional materials, maintenance of domain name registrations, website development, conferences and video production. If Palantir Technologies were ordered to cease use of the Palantir Technologies name and the PALANTIR mark, I estimate that it would incur expenses in excess of $1,000,000 to choose a new name and trademark, obtain a new domain, and recall and reissue all of its collateral material. These expenses would be significantly greater if Palantir Technologies were ordered to change its name and trademark on short notice.

**DECLARATION OF STEPHEN COHEN** - 9 - **CASE NO. C-07-3863 CRB**

53. In addition, as I mentioned above, Palantir Technologies has devoted extensive resources to the promotion of its products through advisors and consultants. Those advisors and consultants have spurred discussions among prospective clients, in the intelligence community in particular, that are beginning to foster interest in Palantir Technologies. I understand and believe that much of this discussion is conducted on classified, secret and top secret networks to which Palantir Technologies does not have access.

54. If Palantir Technologies were ordered to change its name and trademark, it would lose the value of the "buzz" that it has created in the intelligence community through its extensive investment in advisors and consultants.

55. There is no effective way to redirect this "buzz" to a renamed Palantir Technologies because Palantir Technologies does not have access to the means of communication used by the intelligence community. A posting on the Palantir Technologies website that it had changed its name and website location would be of little, if any, value because those in the intelligence community do not use that website as the means of learning about Palantir Technologies or engaging Palantir Technologies. Rather, they communicate through classified, secret and top secret networks.

56. If Palantir Technologies were forced to change its name and trademark, I believe that we would lose most, if not all, of the over $2 million that we have invested in advisors and consultants. Additionally, a large amount of money would be required to rebuild the good will.

57. In conclusion, although it would be virtually impossible to quantify the harm to Palantir Technologies if it were forced to give up its name and trademark, that harm would include at least $1,000,000 in out of pocket expenses and over $5 million to repair the loss of goodwill.

**DECLARATION OF STEPHEN COHEN** - 10 - **CASE NO. C-07-3863 CRB**

FURTHER DECLARANT SAYETH NOT.

I, Stephen Cohen, declare under penalties of perjury under the laws of the United States, that the foregoing is true and correct. Executed in Palo Alto, California on December 21, 2007.

                                      s/Stephen Cohen
                                      Stephen Cohen