**JOSEPH L. STRABALA**
**JOE STRABALA LAW OFFICE**
One Embarcadero Center, Suite 1020
San Francisco, CA 94111-3698
Telephone: (415) 981-8083
Facsimile: (415) 495-3351
Email: legal@quantumsi.com

**THOMAS D. ROSENWEIN (Pro Hac Vice)**
**DON E. GLICKMAN**
**JAMES A. FLESCH**
**GORDON, GLICKMAN, FLESCH & ROSENWEIN**
140 South Dearborn Street, Suite 404
Chicago, IL 60603
Telephone: (312) 346-1080
Facsimile: (312) 346-3708
Email: trosenwein@lawggf.com

Attorneys for Defendant
PALANTIR.NET, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., | Case No.: C -07 3863 CRB |
| Plaintiff/Counterdefendant, | **PALANTIR.NET, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION (REDACTED)** |
| vs. | |
| PALANTIR.NET, INC., | • Declaration of George DeMet |
| Defendant/Counterplaintiff. | • Declaration of Tiffany Farriss |
| | • Ex. A – Database definition |
| | • Ex. B – Database basics |
| | • Ex. C – HTML definition |
| | • Ex. D – GUI definition |
| | • Ex. E – Deposition of Tiffany Farriss |
| | • Ex. F – Declaration of George DeMet |
| | • Ex. G – Deposition of George DeMet |
| | • Ex. H – Palantir Corporation search |
| | • Ex. I – Palantir USA Inc. search |
| | • Ex. J – Palantir Economic Solutions search |
| | • Ex. K – Palantir Google search |
| | • Ex. L – Declaration of Tiffany Farriss |
| | • Ex. M – PayPal Article |
| | • Ex. N – ANDUIN Trademark application |
| | • Ex. O – *Journal of Advertising Research* article |

1

**JOSEPH L. STRABALA**
**JOE STRABALA LAW OFFICE**

2

One Embarcadero Center, Suite 1020
San Francisco, CA 94111-3698

3

Telephone: (415) 981-8083
Facsimile: (415) 495-3351

4

Email: legal@quantumsi.com

5

**THOMAS D. ROSENWEIN**
**DON E. GLICKMAN**

6

**JAMES A. FLESCH**
**GORDON, GLICKMAN, FLESCH & ROSENWEIN**

7

140 South Dearborn Street, Suite 404
Chicago, IL 60603

8

Telephone: (312) 346-1080
Facsimile: (312) 346-3708

9

Email: trosenwein@lawggf.com

10

Attorneys for Defendant
PALANTIR.NET, INC.

11

12

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

13

PALANTIR TECHNOLOGIES, INC.,      )      **Case No.: C -07 3863 CRB**

14

          Plaintiff,      )      **TABLE OF CONTENTS TO**
          )      **PALANTIR.NET, INC.'S REPLY IN**

15

vs.      )      **SUPPORT OF ITS MOTION FOR**
          )      **PRELIMINARY INJUNCTION**

16

PALANTIR.NET, INC.,      )
          )      Date:   January 14, 2008

17

          Defendant.      )      Time:   2:00 p.m.
          )      Courtroom 8

18

19

## TABLE OF CONTENTS TO PALANTIR.NET, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

20

21

I.      Argument ...................................................................................... 1

22

      A.      PTI and Palantir.net Offer Overlapping Services ............................................ 1

23

      B.      Palantir.net's Mark Merits Protection................................................................. 4

24

      C.      The Parties Use Overlapping Marketing Channels ¦............................... 8

25

      D.      Confusion is Determined by Reference to Palantir.net's Clients
              and Potential Clients ....................................................................................... 9

26

27

      E.      Costs of Services and "Sophistication" of Buyers
              Does Not Run in PTI's Favor ...................................................................... 10

28

i

F.    The Parties Overlap in Customers and Industries Served ........................12

G.    Evidence of Actual Confusion ...........................................................12

H.    Intent Favors Palantir.net.................................................................13

I.    Balance of Hardships Favors Palantir.net............................................14

II.    Conclusion ....................................................................................15

ii

**JOSEPH L. STRABALA**
**JOE STRABALA LAW OFFICE**
One Embarcadero Center, Suite 1020
San Francisco, CA 94111-3698
Telephone: (415) 981-8083
Facsimile: (415) 495-3351
Email: legal@quantumsi.com

**THOMAS D. ROSENWEIN**
**DON E. GLICKMAN**
**JAMES A. FLESCH**
**GORDON, GLICKMAN, FLESCH & ROSENWEIN**
140 South Dearborn Street, Suite 404
Chicago, IL 60603
Telephone: (312) 346-1080
Facsimile: (312) 346-3708
Email: trosenwein@lawggf.com

Attorneys for Defendant
PALANTIR.NET, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PALANTIR TECHNOLOGIES, INC., )
                              )
      Plaintiff, )
                              )
    vs. )
                              )
PALANTIR.NET, INC., )
                              )
      Defendant. )
                              )

**Case No.: C -07 3863 CRB**

**TABLE OF AUTHORITIES TO PALANTIR.NET, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Date:  January 14, 2008
Time:  2:00 p.m.
Courtroom 8

## TABLE OF AUTHORITIES TO PALANTIR.NET, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

*Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1219 (9th Cir. 1987) ............................. 4

*Resource Lenders, Inc. v. Source Solutions, Inc.*, 404 F.Supp.2d 1232, 1241-42
   (E.D. Cal. 2005) ............................................................................................................ 4, 13

*Wal-Mart Stores v. Samar Brothers, Inc.*, 529 U.S. 205, 209 (2000) ............................................ 5

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) .................................................. 5

*Brookfield Communications, Inc. v. West Coast Entertainment Corporation*,
   174 F.3d 1036, 1058-1059 (9th Cir. 1999) .............................................................. 5, 8, 12, 15

*Charles Schwab & Co., Inc. v. Hibernia Bank*, 665 F.Supp. 800, 806 (N.D. Cal. 1987) ..... 7,11,13

*Rosen Entm't Sys., LP v. Icon Enters., Inc.*, 349 F.Supp.2d 902, 910 (C.D. Cal. 2005) .................. 7

i

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F.Supp.2d 1093, 1095 (C.D. Cal. 2003).................................................................................... 9

*M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1084-1085 (9th Cir. 2005)............. 9

*Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998).......... 9

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) ............................... 9,15

*Watts Health Systems, Inc. v. United Healthcare Corporation*, 960 F.Supp. 1431, 1436 (C.D. Cal. 1996)............................................................................... 10

*CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 680 (7th Cir. 2001) ....................... 10,11

*E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) .......................... 11

*Health Net v. USA Healthnet, Inc.*, 1993 WL 209564 (C.D. Cal. 1993) ...................................... 11

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 345 (9th Cir. 1979) ............................................. 13

TABLE OF AUTHORITIES TO PALANTIR.NET, INC.'S
REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

CASE NO. C 07 3863

Palantir Technologies Inc.'s ("PTI") opposition to Palantir.net's Motion for Preliminary Injunction is based a mischaracterization of the factual overlap between the services offered by PTI and Palantir.net; distortions of the applicable case law; and a grossly exaggerated version of the alleged harm that the entry of a preliminary injunction would entail for PTI. The facts are that PTI is using the identical mark PALANTIR for the same overlapping services; the analysis of the pertinent factors for determining infringement strongly favors Palantir.net; and the harm from entering a preliminary injunction against PTI is nonexistent.

## I.    ARGUMENT

### A.    PTI AND PALANTIR.NET OFFER OVERLAPPING SERVICES

PTI's Opposition attempts to characterize Palantir.net as strictly a website design company. This characterization is false. Palantir.net has designed and developed many software programs that allow users to connect different kinds of data, search that data, create records of searches, and allow collaboration. The Declarations of George DeMet, attached to Palantir.net's Motion for Preliminary Injunction and to this Reply, as well as Tiffany Farriss' Deposition, described numerous examples of Palantir.net projects that incorporate one or more aspects of database software and database management systems. In particular, Farriss testified as to a number of database projects that Palantir.net has performed. These included the Heartfelt Project (Ex. E, pp. 52-60); School for Continuing Studies at Northwestern University (Ex. E, pp. 62-66); Sacred Heart-St. Mary's Hospital (Ex. E, pp. 67-74); Sottrell Hotel Group (Ex. E, pp. 75-82); Chicago Public Schools (Ex. E, pp. 85-94); and Northwestern University Purchase Order System (Ex. E, pp. 94-101). In addition, Ms. Farriss testified about designing database software for others using applications such as Oracle, SQL Server, MySQL, and Access in

1

devising database software solutions for clients. (Ex. E, pp. 102-111, 114-115) *See also*, DeMet Declaration, attached as Ex. F, ¶¶ 7-12. Palantir.net's database services include database integration services by which data from various locations are brought together. (Farriss Dep., Ex. E, p. 125-133)

PTI attempts to further obfuscate the closeness of services by emphasizing the need to protect the data that is searched by its clients. As a result, PTI claims that its services cannot involve the Internet. However, this alleged distinction is invalid for two reasons. First, Palantir.net has created databases that are not accessed through the Internet, but are either stand-alone or accessed through a client's own intranet, thus enabling complete security. Thus, Palantir.net has produced products that are deployed on secured networks; for example, the Northwestern University Purchase Order System and the Sacred Heart-St. Mary's Hospital intranet application. (Ex. E, pp. 94-101, 67-74) In addition, Palantir.net has produced products that are not connected to the network at all, for example, the Sottrell Hotel database application (Ex. E, pp. 75-82) *See also*, DeMet Declaration, Ex. F, ¶¶7-8.

Databases are not particularly esoteric. A database is simply a "collection of information organized in such a way that a computer program can quickly select desired pieces of data." (Exhibit A) Similarly, "database software" is simply a "computer program that allows the storage of large amounts of information and gives the capacity to search, retrieve, sort, revise, analyze and order data quickly and efficiently (*e.g.*, Access)."[1] Both PTI and Palantir.net create and offer for sale such "database software."

---

[1] "Access" is a Microsoft database management system. According to Microsoft, the Access system enables a user to (1) add new data to a database, such as a new item in an inventory; (2) edit the existing data in the database, such as changing the current location of an item; (3) delete information, perhaps if an item is sold

Secondly, PTI's own applications appear to be capable of exporting reports in a format that may be published to or on a website. As shown in the disk that accompanied PTI's Opposition, PTI's governmental system is designed so that each slide can be exported into HTML for purposes of sharing the output of an analyst's work. (Ex. A, Dec. of Stephen Cohen, at: 26:00-26:05). As this Court knows, HTML is the abbreviation for "hypertext markup language," which is the authoring language used to create documents on the Internet. (Exhibit C) Thus, PTI's database application is fully capable of a web-based use should a client wish to do so. Certainly, there is no impairment to a client of PTI accessing data through an intranet or a pass-protected Internet medium.

PTI's fundamental error in this regard is to conflate database applications with user interfaces for access to the databases. As Ms. Farriss testified in her deposition, Palantir.net provides computer services that can be customized for each client. (Ex. E, p. 125). Palantir.net selects the particular graphical interface ("GUI" – *see* Ex. D) based on what is appropriate for the client. Typically, but not always, Palantir.net will solve a particular client's problem by utilizing a web-accessible, browser-based GUI. However, there is no innate difference in the capabilities and functionalities of browser-based GUIs when compared to stand-alone interfaces. *See also*, DeMet Declaration, Ex. F, ¶¶ 10-12.

The browser-based interface is often preferable when the client has a need for cross-platform compatibility, *i.e.*, the application must be able to be run on a variety of computers using personal computers that have different operating systems, such as Microsoft Windows VISTA, Windows XP, Windows 98, Windows ME, Apple's Macintosh operating systems,

---

or discarded; (4) organize and view the data in different ways; and (5) share the data with others via reports, e-mail messages, and intranet or the Internet." (*See* Exhibit B)

**PALANTIR.NET, INC.'S REPLY**                                              CASE NO. C 07 3863
**IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.**

including classic Mac OS 8.6, as well as OS X and various distributions of Linux. In addition, clients often have a need for distributed remote access to an application because the client has multiple locations (*e.g.*, Ex. E, p. 56) or the client wishes to have its own customers access all or some of the available databases (*e.g.*, Ex. E, pp. 68-70).

While the competing services here are identical in their overlap, case law makes clear that the competing services need not be identical to establish infringement: "The zone of service mark protection may extend into the area of non-competing services if the junior user's mark may create the impression that the services identified are affiliated with the holder of the registered mark." Rodeo Collection Ltd. v. West Seventh, 812 F.2d 1215, 1219 (9th Cir. 1987). *See also*, Resource Lenders, Inc. v. Source Solutions, Inc., 404 F.Supp.2d 1232, 1241-42 (E.D. Cal. 2005) ("where the services are related or complimentary, the danger of confusion is heightened."). In Resource Lenders, the court found a relatedness and infringement even though home mortgage services and loan products typically involve loans in excess of $100,000.

Accordingly, PTI's attempt to define its services as "radically different" from those of Palantir.net's must fail.

## B.    PALANTIR.NET'S MARK MERITS PROTECTION.

PTI asserts that PALANTIR® is a weak mark because it is "suggestive." PTI also asserts that the existence of other "Palantir" marks narrows the zone of protection that Palantir.net can assert. PTI also contends that Palantir.net has failed to police its mark by allowing others to use the same or similar mark. PTI's assertions are mistaken both as to fact and law.

Palantir.net has assumed for the purposes of its Motion for Preliminary Injunction that a significant proportion of the population is very familiar with Tolkien's work, as evidenced by the

4

success of the movies based on the novels.  The term PALANTIR is "suggestive" therefore to

those who have a particular interest in the Tolkien novels and movies.  However, for those who

are not fans of Tolkien's works, or are casual fans unfamiliar with all of the attendant

nomenclature, the term is arbitrary.  Thus, on the spectrum of marks, ranging from generic to

arbitrary, Palantir should be considered on the high end of the spectrum;  certainly closer to

arbitrary than to descriptive.  As stated by the Supreme Court in Wal-Mart Stores v. Samar

Brothers, Inc., 529 U.S. 205, 209 (2000), "'[a]rbitrary,' 'fanciful' and 'suggestive' marks,

because their intrinsic nature serves to identify a particular source of a product and not to

describe its attributes, are deemed to be 'inherently distinctive' and are entitled to protection

immediately upon their first use in commerce or trade."  *Accord*, Two Pesos, Inc. v. Taco

Cabana, Inc., 505 U.S. 763, 768 (1992).

PTI cites Brookfield Communications, Inc. v. West Coast Entertainment Corporation,

174 F.3d 1036, 1058-1059 (9th Cir. 1999) for the notion that "suggestive marks are

presumptively weak."  However, PTI does not provide the rest of the Brookfield's statement on

the topic, which fully undercuts PTI's assertion.  As the Brookfield court held:

> Some weak marks are weaker than others, and although
> "MovieBuff" falls within the weak side of the strength spectrum,
> the mark is not so flabby as to compel a finding of no likelihood of
> confusion in light of the other factors we have considered.
> Importantly, Brookfield's trademark is . . . strong enough to
> warrant trademark protection – because it requires a mental leap
> from the mark to the product.  [Citation omitted]  Because the
> products involved are closely related and West Coast's domain
> name is nearly identical to Brookfield's trademark, the strength of
> the mark is of diminishing importance in the likelihood of
> confusion analysis.

Secondly, PTI's contention that the field is "crowded" with Palantir marks is factually

5

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

erroneous. The registration for the mark PALANTIR that was held by another company at the time that Palantir.net filed for its application turned out to be owned by a defunct business and hence, not actually using the mark. (DeMet Dep., Ex. G, p. 38) Consequently, Palantir.net was able to proceed with its application unimpeded. Similarly, PTI mischaracterizes Palantir.net's willingness to enter into a consent agreement with Lane15 Software, Inc. Lane15 proposed to use the term "Palantier," a different spelling from Palantir.[2] Because Lane15's proposed mark was different, and because Palantir.net determined that the goods that Lane15 was prepared to offer were in the nature of hardware for a particular switching system, Palantir.net was agreeable to the consent. However, Lane15 did not proceed with its Palantier application, so that the consent agreement was moot. (*Id.*) This is hardly evidence of a "crowded" field or Palantir.net's failure to carefully police its mark.

PTI cites only four "computer-related businesses" that are allegedly using "Palantir" in their tradenames: Palantir Economic Solutions (Pltf. Ex. 29); the Palantir Corp. (Ex. B to Ries Dec.); Palantir USA, Inc. (Ex. C to Ries Dec.) and Palantir Analytics Corporation (Ex. F to Ries Dec.). With regard to Palantir Corporation, PTI has provided no information regarding its activities, preferring to simply indicate that it is a registered corporation in Illinois. A Google search reveals that it has no presence on the Web, and does not appear to be an active corporation. (Ex. H) Similarly, the reference to Palantir USA, Inc. is inapposite, as a Web search reveals that that company has no presence on the Web and apparently is inactive. (Ex. I) Palantir Analytics Corporation appears to be a relatively new entity, and its goods and services are undetermined, as shown by the printout of its website, Exhibit F to Ries' Declaration.

---

[2] On page 9 of its Memorandum in Opposition, PTI mistakenly states that Lane15 requested a consent to use the identical mark.

6

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

Palantir Analytics does not advertise its services on its site and requires a user name and password to even enter its site.

That leaves Palantir Economic Solutions as the only company that may share the trade name "Palantir" in fields relating to Palantir.net.  We say "may" because it appears to be a company that has only recently obtained a presence in the United States.  This is a company that advertises itself as specializing in "economic evaluation, planning and risk analysis in the oil and gas industry," that is composed of "a group of expert petroleum engineers, economists and IT professionals."  (Exhibit J)  Moreover, it appears that the company is based in London and has only recently opened an office in the United States.

Thus, the allegedly competing entities using "Palantir" that are cited by PTI consist of precisely *one* entity, Palantir Economic Solutions, actively using "Palantir" and which may or may not pose a likelihood of confusion with Palantir.net.  This hardly constitutes a crowded field.  *See* Charles Schwab & Co., Inc. v. Hibernia Bank, 665 F.Supp. 800, 806 (N.D. Cal. 1987) (third-party uses do not show "crowded field" or relative weakness of the mark when infringer fails to meet burden of showing "how extensive the uses are and how long they have continued.")  Omitted from PTI's listing are the three entities that Palantir.net *has* challenged, and all of whom have agreed to change their names or marks.  (DeMet Dep., Ex. G, pp. 54-58)  In any event, Palantir.net has been in litigation with PTI since the end of July 2007 and is not required to simultaneously litigate with others.  Rosen Entm't Sys., LP v. Icon Enters, Inc., 359 F.Supp.2d 902, 910 (C.D. Cal. 2005).

PTI's final contention in this regard is that Palantir.net has somehow delayed in bringing its Motion for Preliminary Injunction, thereby suggesting that such relief should not be awarded.

7

Such a claim is risible.   Recall that PTI peremptorily filed suit on July 27, 2007 while negotiations regarding a resolution of the issues presented herein were ongoing.   Before the substance of the issues could be addressed, it was necessary to determine the appropriate venue for proceeding.   The issue was decided on October 2, 2007 by this Court, denying Palantir.net's Motion to Dismiss or Stay.   Two weeks later, Palantir.net filed its Counterclaims.   One week thereafter, Palantir.net filed its Motion for Preliminary Injunction.   Palantir.net's conduct in bringing its Motion for Preliminary Injunction can hardly be deemed dilatory.

## C.    THE PARTIES USE OVERLAPPING MARKETING CHANNELS

PTI contends that Brookfield, *supra*, is not pertinent because the parties there offered their goods and services primarily over the Internet.   (PTI Mem. at 15)   Neither party, says PTI, uses the Internet "as the primary or even an important advertising tool."   *Id.*   However, this contention is both an unnecessary limitation on Brookfield and disregard of the importance of both parties' Internet presence.   As PTI admits, its Internet presence is important.   It admits that its site is used to recruit personnel, and it admits buying Google AdWords to increase its visibility.   Palantir.net's site serves a similar function.   Moreover, clients have come to Palantir.net through its website.   (Ex. E, pp. 38, 78)

The Internet is increasingly a place where potential customers go to investigate potential companies and vendors prior to being directly in touch for a product, service or customer service representative.   A March 20, 2004 study in *The Journal of Advertising Research* demonstrated that the Internet is a complimentary medium to other media advertising.   In other words, the Internet does not function solely as an independent advertising medium, but is utilized to investigate and validate the *bone fides* of a company or vendor once a potential customer

8

becomes aware of its existence. (Ex. O)

PTI's depreciation of its web-based marketing is without merit for an additional reason. Palantir.net's goods and services are not available over the Internet. Like PTI, its site is informational and provides assurances to clients and potential employees of the legitimacy of its operations. Like PTI's site, interested parties can contact Palantir.net through the "Contact us" link, just as those interested in contacting PTI can do so. (Ex. F, ¶13)

### D. CONFUSION IS DETERMINED BY REFERENCE TO PALANTIR.NET'S CLIENTS AND POTENTIAL CLIENTS

PTI places its emphasis on its own clients not being confused. This is an improper focus. The focus is instead upon the likelihood of confusion that the Palantir.net's customers will experience. This focus on Palantir.net's customers is applicable whether this case is viewed as a reverse confusion case or a forward confusion case. *See* Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha, 290 F.Supp.2d 1083, 1095 (C.D. Cal. 2003) ("In a reverse confusion case, the degree of care exercised by customers is determined with reference to the alleged senior users' customers only"), and M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1084-85 (9th Cir. 2005) (analyzing degree of care with regard to senior markholders' consumers in forward confusion case). *Accord,* Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1130 (9th Cir. 1998) ("we must focus on Dreamwerks' customers and ask whether they are likely to associate the conventions with Dream Works, the studio."); GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000).

In this regard, PTI attempts to distinguish itself from Palantir.net through its use of lobbyists to market its services. However, the use of such "intermediaries" does not avoid

9

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

likelihood of confusion. A similar argument was made by the junior user in <u>Watts Health Systems, Inc. v. United Healthcare Corporation</u>, 960 F.Supp. 1431, 1436 (C.D. Cal. 1996). There, the junior user argued that no confusion would occur because it used "sophisticated intermediaries" to place the majority of its business. The court dismissed the argument, holding that the issue is not whether the junior user's potential members would be confused, but whether the senior user's potential members and the public at large would be confused.

It is significant that PTI admits that it uses Google AdWords to increase its representation on Internet searches. PTI obscures the effect of PTI's efforts to increase its visibility on the Internet by proffering a search in which the word "Palantir" is coupled with "software." However, when one runs a search simply using the term "Palantir," which is the likeliest form of search for customers seeking to investigate either company on the Internet, Palantir Technologies is the first result that appears. Palantir.net shows below it at the third rank. (*See* Exhibit K) If PTI did not seek to use the Internet as an important advertising media, one wonders why it would invest in increasing its visibility there. Targeted job websites, industry workshops, seminars and conferences are other vehicles for locating potential employees. (Ex. E, p. 15) If PTI only wished to attract job seekers, it could use such avenues rather than its website. Thus, PTI's denial of the significance of its website advertising rings hollow.

## E. COSTS OF SERVICES AND "SOPHISTICATION" OF BUYERS DOES NOT RUN IN PTI'S FAVOR.

PTI contends that the sophistication of customers (primarily its own alleged customers) and the costs of the services involved strongly suggests that there is no likelihood of confusion. PTI denigrates the significance of the <u>CAE, Inc. v. Clean Air Engineering, Inc.</u>, 267 F.3d 660,

10

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

680 (7th Cir. 2001), because it is a decision of the Seventh Circuit. However, the very same point is made in this circuit. *See, e.g.,* E & J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992) ("where goods are related or complimentary, the danger of customer confusion is heightened."); Health Net v. USA Healthnet, Inc., 1993 WL 209564 (C.D. Cal. 1993) (while court appreciates that services can be deemed analytically distinct, "for purposes of service mark infringement analysis, the services offered and utilized by plaintiff and defendant are very much similar, if not fungible," *i.e.*, prepaid health plans for HMOs versus PPOs).

As in CAE, *supra*, the issue of the sophistication of buyers was specifically addressed in Charles Schwab, *supra*. There, the court held that "sophistication does not preclude a likelihood of confusion" and "could increase confusion." The Schwab court noted that such customers are "aware of the deregulation and diversification of the financial services industry." As a result, when seeing plaintiff's registered trademark and the same mark used by defendant, "they might assume there must be some connection between the two."

The same effect is likely here. Sophisticated business people are aware of the increasing mergers and acquisitions in all fields of economic activity. Many technology companies have been acquired by others, *e.g.*, E-Bay's acquisition of PayPal or Google's acquisition of YouTube. The similarity of tradenames and the identity of marks makes such confusion as to affiliation, association or sponsorship weigh in the favor of likelihood of confusion.

PTI argues that because its projects are typically valued at $██████ or more, there can be no likelihood of confusion. In an event in 2007 alone, Palantir.net has had as many clients at that pricepoint as has PTI in its entire firm's history. Since its incorporation, Palantir.net has had eight clients for whom it completed projects over $██████, as well as an additional four with

11

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

fees over $███████  In 2007, Palantir.net had two clients for whom it completed over $██████ in

projects, three other clients for whom it billed over $██████ (Farriss Dec., Ex. L, ¶¶5-6)  It is

apparent that the cost of the services provided per client by Palantir.net has been trending upward

over the years.

**F.    THE PARTIES OVERLAP IN CUSTOMERS AND INDUSTRIES SERVED.**

As shown in Palantir.net's Declarations accompanying the Motion for Preliminary

Injunction, Palantir.net serves both the financial services industry and governmental agencies.  It

has not only targeted but it has provided services to a contractor for a FEMA.  PTI claims that its

involvement with government agency is different because it is working directly for a CIA

affiliate rather than through a contractor.  However, as shown by the Declaration of Tiffany

Farriss attached hereto as Exhibit K, simply because government agencies typically contract

directly with large contractors with a subset chain in turn of smaller subcontractors, that does not

mean that Palantir.net did not have extensive interaction directly with FEMA personnel.  In fact,

Ms. Farriss was in both New Orleans to observe disaster recovery efforts and the Department of

Homeland Security offices in Washington, D.C. as part of her work on the TACManager project

for FEMA.  (Ex. L, ¶¶7-8)  In addition, Mr. DeMet consulted directly with FEMA personnel as

part of a separate website consulting project for which Palantir.net was employed as a consultant.

(Ex. F, ¶3)

**G.    EVIDENCE OF ACTUAL CONFUSION**

As stated in Brookfield Communications, Inc., *supra*, "[t]he failure to prove instances of

actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard

to prove;  difficulties in gathering evidence of actual confusion make its absence generally

12

unnoteworthy." 174 Ill.App.3d at 1050 (9th Cir. 1999). *See also*, <u>Resource Lenders, Inc. v. Source Solutions, Inc.</u>, *supra*, at 1244 ("evidence of actual confusion is not determinative in an action seeking an injunction for service mark infringement such as this one.")

Nonetheless, evidence of actual confusion is a useful factor, not to be disregarded when there is evidence of such. PTI does not deny that there have been two instances of actual confusion of sophisticated software programmers. While the known instances of actual confusion are few, such instances do weigh in favor of a finding of likelihood of confusion.

## H.    INTENT FAVORS PALANTIR.NET

PTI asserts that it had no intent to infringe upon or trade upon the reputation of Palantir.net when it chose the mark Palantir. However, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, [it is] presume[d] that the public will be deceived." (<u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 345 (9th Cir. 1979)).

Here, PTI's CEO, Alex Karp, neither undertook a formal trademark search nor can recall the results of his desultory Google search. Palantir.net's service mark application was pending while Karp decided on the name, and the PTO website would have enabled him to locate that use-based filing. PTI's failure to make a serious investigation of the existence of other competing Palantir marks in the marketplace shows a level of disregard for the rights of trademark holders which, if not rising to the level of intent to deceive, at least comes close. Willful blindness cannot serve to insulate PTI from a finding of likelihood of confusion. In this regard, *see*, <u>Charles Schwab Co.</u>, *supra*, at 811, where the court held that the presumption of intent to infringe arises when a defendant "adopts a virtually identical trademark when other phrases are available and continues its use after receipt of notice of the trademark owner's rights

13

and objections."

## I.    BALANCE OF HARDSHIPS FAVORS PALANTIR.NET

PTI asserts exaggerated protestations of harm. The reality is that PTI has only two clients. One of them, by far the biggest, is Clarium Case Management ("Clarium"). Clarium was founded and is run by Peter Thiel, who is also a founder of PTI. Indeed, PTI's CEO, Alex Karp, notes that he consulted with Thiel on the selection of PTI's name. (Karp Declaration, Pltf. Opposition, ¶15) As shown by the attached article (Exhibit L), the founder of PTI and Clarium were colleagues at PayPal, an Internet startup that itself was the result of a merger between two earlier entities. As Exhibit M shows, the plaintiff, Palantir Technologies, was founded by Nathan Gettings, who developed PayPal's anti-fraud models. In addition, Palantir is funded, at least in part, by Peter Thiel of Clarium. Clearly an injunction *pendante lite* will not result in the loss of PTI's largest client. That relationship is the result of close personal relationship and interlocking financial investment, not a brand name.

Similarly, PTI's other client is unlikely to be deterred from further engagement as a result of a name change. As PTI admits, it has obtained its relationships with quasi-governmental agencies through lobbyist intermediaries. PTI has submitted no evidence that a change of name would result in loss of business.

It is significant to note that PTI has apparently already anticipated a change of name. It has filed with the Trademark Office an application for ANDUIN for precisely the same services as listed for its pending Palantir application, albeit in Class 9 rather than Class 35. That term, which is also an obscure term used in the Tolkien novels, would allow PTI to have easy continuity with its prior identity. (Ex. N)

14

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

Palantir.net, on the other hand, stands to suffer harm if a preliminary injunction is not entered.    In effect, the future prospects of Palantir.net would be yoked to PTI, thereby disenabling Palantir.net to protect its reputation.    Moreover, it is established that a likelihood of success on the merits creates a presumption of irreparable injury.    *See* GoTo.com, *supra* at 1209; Brookfield, *supra* at 1066 ("irreparable injury may be presumed from showing of likelihood of success on the merits of a trademark infringement claim.")

## II.    CONCLUSION

For the reasons set forth above, Palantir.net respectfully requests that this Court enter a preliminary injunction that bars Plaintiff PTI from imitating, copying, duplicating or otherwise making use of Palantir.net's service mark PALANTIR® or any mark confusingly similar to such mark during the pendency of this litigation.

Dated this December 31, 2007

**JOE STRABALA LAW OFFICE**


By:  /S/ Thomas D. Rosenwein
      Thomas D. Rosenwein

**THOMAS D. ROSENWEIN
DON E. GLICKMAN
JAMES A. FLESCH
GORDON, GLICKMAN, FLESCH &
   ROSENWEIN**
140 South Dearborn Street, Suite 404
Chicago, IL 60603
Telephone: (312) 346-1080
Facsimile: (312) 346-3708
Email: trosenwein@lawggf.com
Attorneys for Defendant
PALANTIR.NET, INC.

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863

**JOSEPH L. STRABALA**
**JOE STRABALA LAW OFFICE**
One Embarcadero Center, Suite 1020
San Francisco, CA 94111-3698
Telephone: (415) 981-8083
Facsimile: (415) 495-3351
Email: legal@quantumsi.com

16

PALANTIR.NET, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION.

CASE NO. C 07 3863